HONORABLE ROBERT J. BRYAN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| GEORGE A. TILLETT, et al., | Case No. C09-5621 RJB |
| Plaintiffs, | DEFENDANT HAROLD PHILLIP WHATLEY'S MOTION FOR SUMMARY JUDGMENT |
| v. | |
| CITY OF BREMERTON, et al., | **NOTED FOR:** |
| Defendants. | **Friday, December 10, 2010** |

## I.   RELIEF REQUESTED

Defendant Harold Phillip Whatley requests that this Court enter an order dismissing all plaintiffs' claims against him.

## II.   INTRODUCTION

During the service of a valid search warrant on a residence, Bremerton Police Detectives detained the occupants of the house. George Tillett was one of the occupants. Tillett opened a door, began to exit a room, and encountered Detective Whatley. Whatley told Tillett, "Police, get on the ground!" Tillett refused and replied, "No!" Tillett retreated into the room he had begun to exit. Based on his training and experience, Whatley knew that the risk of danger to himself and others increased if Tillett was not detained. Whatley reached to grab Tillett's jacket, but Tillett continued to back up, moving away from Whatley. As Tillett backed up, he tripped and landed in a sitting position. Whatley grasped Tillett's jacket, told him to lie on the ground and attempted to get Tillett to the ground, so

Defendant Whatley's Motion for Summary
Judgment - 1
C09-5621 RJB

ROGER A. LUBOVICH
BREMERTON CITY ATTORNEY
345 6th Street, Suite 600, Bremerton, Washington 98337
Phone: 360-473-2345  Fax: 360-473-5161

Whatley could safely detain Tillett. Tillett again refused Whatley's commands and yelled, "No!" Whatley was finally able to get Tillett to the ground by pulling Tillett's jacket. Detective Jeffrey Inklebarger, arrived to assist Whatley.

While on the ground, Tillett continued to refuse to comply. Tillett tucked his left arm under his body, so Whatley would not be able to place restraints on his wrists. Finally Whatley and Inklebarger were able to place handcuffs on Tillett's wrists. The detectives then assisted Tillett to his feet. Detectives Inklebarger and Plumb escorted Tillett out of the house.

Once Tillett was out of the house, he was provided a chair on which to sit. His wrist restraints were removed. Tillett complained of an injury to his right hand and told officers that he had broken his right hand prior to the police contacting him. Bremerton police officers offered to call for medical aid, but Tillett refused. Nevertheless, Bremerton police called for medical aid. Medical aid arrived, but Tillett refused to be treated. The only force Whatley used against Tillett was grabbing his jacket, pulling him to the ground and grabbing his arm in order to place restraints on Tillett. Whatley did not strike Tillett, or kick him, or push him, or use any force other than that which was necessary to detain Tillett and place him wrist restraints.

### III. STATEMENT OF FACTS

The Bremerton Police Department has a division called the Special Operations Group (SOG). Plumb Deposition[1] at 4:23-24. SOG detectives investigate vice and narcotics related crimes. *Id* at 5:12-15. In September 2008, the detectives in SOG were Sergeant Randy Plumb, Steven Polonsky, Jeffrey Inklebarger, Harold Phillip Whatley,

---

[1] Portions of the transcript of the Deposition of Randy Plumb are attached as Exhibit A to the Declaration of Mark E. Koontz in Support of City Defendants' Motions for Summary Judgment.

Defendant Whatley's Motion for Summary
Judgment - 2
C09-5621 RJB

Floyd May, Roy Alloway, and Rachel Lepovetsky. *Id.* at 7:1-4.

On September 3, 2008, SOG detective Steven Polonsky conducted a controlled buy of methamphetamine using a Police Operative (P.O.). Under the surveillance of SOG detectives the P.O. purchased methamphetamine from Erik McShepherd at 1718 Sheridan Road, Bremerton, Washington. McShepherd resided at 1718 Sheridan, a residence owned by George (Tom) Tillett, Jr.[2] and his wife Nancy Tillett. Polonsky Decl., Ex. A at A-4.

On September 8, 2008, Polonsky conducted another controlled buy of methamphetamine from Erik McShepherd at 1718 Sheridan Road using the same P.O. Polonsky Decl., Ex. A at A-6.

Also on September 8, 2008, Polonsky presented a complaint for a search warrant for 1718 Sheridan Road to Kitsap County Superior Court Judge Jay Roof. Polonsky Decl., Ex. B. Polonsky documented in the complaint that the P.O. purchased methamphetamine from McShepherd in the residence located at 1718 Sheridan Road. *Id.* at 5:9-6:2. Polonsky also documented that the P.O. told Polonsky that while the P.O. was in the residence at 1718 Sheridan Road, the P.O. observed Nancy Tillett holding a "meth pipe" and Nancy Tillett asked the P.O. if the P.O. wanted to smoke methamphetamine. *Id.* at 5:23-29.

Judge Roof found probable cause to search 1718 Sheridan Road and issued a search warrant for "A two story unfinished wood residence located at 1718 Sheridan Road, Bremerton in Kitsap County, Washington." Polonsky Decl., Ex. C at 1:15-23. The warrant authorized any peace officer to search the 1718 Sheridan residence in order to seize evidence of the crime of Violation of the Uniform Controlled Substance Act,

---

[2] George Tillett, Jr. goes by Tom Tillett. He is the son of plaintiffs George Tillett and Grace Tillett. To avoid confusion, Tom Tillett will be referred to as "Tom" and George Tillett will be referred to "Tillett". No disrespect is intended.

Defendant Whatley's Motion for Summary
Judgment - 3
C09-5621 RJB

ROGER A. LUBOVICH
BREMERTON CITY ATTORNEY
345 6th Street, Suite 600, Bremerton, Washington  98337
Phone:  360-473-2345  Fax:  360-473-5161

RCW 69.50.401. *Id.* at 1:25-29. The residence had an attached garage. Polonsky Deposition[3] at 152:14-17.

SOG detectives served the search warrant on September 10, 2010. Prior to serving the search warrant, Polonsky held a briefing with the members of SOG informing them of the probable cause and the search warrant issued to search 1718 Sheridan Road. Polonsky Decl, Ex. A at A-8. Polonsky informed each member of SOG what their responsibilities were. Plumb Deposition at 26:9-13. Polonsky informed the SOG detectives that the P.O. had told Polonsky that there was a business selling auto parts out of the garage attached to the residence. Polonsky Decl., Ex. A at A-8. In fact, the business was not in operation at the time of the service of the search warrant. Nancy Tillett Deposition[4] at 13:17-23. Tillett was teaching Nancy Tillett about the business, but the business had not yet opened. *Id.* at 13:7-15. In addition, Tillett did not have a business license for an auto parts store at 1718 Sheridan Road. Koontz Decl, Ex. E at 2:8-10

SOG detectives involved in entering 1718 Sheridan were Polonsky, Whatley, Plumb, Inklebarger, Lepovetsky and May. Detective Alloway was assigned surveillance duties and assisting with person detained. Plumb Decl., Ex B. Patrol Officers, including defendant Keith Sargent, did not make entry into the residence but were in charge of covering the residence and assisting with persons detained. Sergeant Decl., Ex A.

SOG detectives arrived at 1718 Sheridan wearing clothing that clearly displayed the word "POLICE" on the front and above each arm. Polonsky Decl., Ex A at A-8. The service of a search warrant for a residence where narcotics are being sold is "extremely

---

[3] Portions of the transcript of the Deposition of Steven Polonsky are attached as Exhibit B to the Declaration of Mark E. Koontz in Support of City Defendants' Motions for Summary Judgment.

[4] Portions of the transcript of the Deposition of Nancy Tillett are attached as Exhibit D to the Declaration of Mark E. Koontz in Support of City Defendants' Motions for Summary Judgment.

Defendant Whatley's Motion for Summary Judgment - 4
C09-5621 RJB

high risk" because drug dealers often have weapons to protect themselves and their investment in narcotics. *Id.* When the entry team was at the door to the house on 1718 Sheridan, Polonsky knocked on the door and shouted "Police! Search Warrant!" several times. *Id.* There was no response from anyone inside the building. *Id.* Detectives Polonsky, Whatley, Plumb, Inklebarger, Lepovetsky and May entered the residence. *Id.* As the detectives moved throughout the house, they shouted loudly, "Police with a search warrant!" Whatley Decl, Ex. A at 2. Several occupants were detained and taken out of the residence to allow the detectives to safely and efficiently search the residence pursuant to the warrant. *Id.*

Whatley was clearing the house.  He came to a stairway that led down into a garage. *Id.* Other detectives had already gone down the stairs. *Id.* At the bottom of the stairs was the garage, where Whatley observed a closed door. *Id.* Whatley did not know what or who was behind the door. *Id.* Whatley stayed at the bottom of the stairs near the closed door to ensure the safety of the other officers. *Id.*, Whatley Deposition[5] at 126:18-127:12. Whatley heard other detectives continuing to announce "Police with a warrant!" Whatley Decl, Ex. A at 2.

The closed door Whatley was covering was suddenly opened by a male wearing a gray coat. Id at 3. The male was later identified as Tillett. *Id.* Whatley was concerned for his safety and the safety of the other officers for several reasons: 1) the officers had been shouting repeatedly that that police were present and had a warrant, yet Tillett had concealed himself behind the door, 2) serving a search warrant on a residence is a dangerous activity, 3) Tillett was wearing a bulky gray coat capable of concealing a

---

[5] Portions of the transcript of the Deposition of Harold Phillip Whatley are attached as Exhibit C to the Declaration of Mark E. Koontz in Support of City Defendants' Motions for Summary Judgment.

Defendant Whatley's Motion for Summary
Judgment - 5
C09-5621 RJB

weapon and 4) Tillett's hands were down at his side (as opposed to in the air) where a weapon could be concealed. *Id.* Whatley pointed his rifle at Tillett and yelled, "Police get on the ground!". *Id.* Tillett refused; instead he said, "No!" and retreated back into the room from which he had emerged. *Id.* Whatley believed it was safer for himself and the other detectives to detain Tillett rather than permit Tillett to go into the room that had not been cleared by detectives where Tillett may arm himself and create a greater risk to the other detectives. *Id.* Whatley reached out to grab Tillett's coat, but Tillett backed away from Whatley. *Id.*, at 3. Tillett continued to back away from Whatley and retreat further into the room. *Id.* While Tillett backed up, he fell into a sitting position. *Id.* Whatley grabbed Tillett by the coat and again told Tillett to lie on the ground. *Id.* Tillett refused, continued to resist and yelled, "No" while trying to pull away from Whatley. *Id.* Whatley pulled on Tillett's coat and Tillett went to the floor and went onto his stomach. *Id.* Inklebarger then arrived to assist Whatley. *Id.*

Inklebarger and Whatley attempted to place hand restraints on Tillett. *Id.* However, Tillett tucked his left arm under his body to prevent the officers from placing restraints on it. *Id.* The officers were able to get Tillett's hands behind his back and place restraints on his wrist. *Id.* Tillett yelled that his hand had been broken. *Id.* Tillett had injured his right hand prior to the service of the search warrant. May Decl., Ex A at 3; Koontz Decl, Ex F. Inklebarger noticed that Tillett had a small laceration on his right wrist. Inklebarger Dec, Ex. A at 2. Inklebarger checked the tightness of the restraints and made sure that the restraints did not come in contact with the laceration. *Id.* Inklebarger also double-locked the restraints, which ensured that they would not tighten. *Id.* Tillett was assisted to his feet and Inklebarger and Plumb escorted Tillett out of the garage to the front of the house.

ROGER A. LUBOVICH
BREMERTON CITY ATTORNEY
345 6th Street, Suite 600, Bremerton, Washington  98337
Phone:  360-473-2345  Fax:  360-473-5161

While outside Tillett requested of Officer Sargent that Tillett be allowed to sit down. Sargent removed the restraints and got a chair for Tillett. Sargent Decl, Ex. A. The hand restraints were on Tillett for approximately five minutes. Plumb Declaration. Sargent and other officers repeatedly asked Tillett if he wanted to receive medical aid, but Tillett declined. *Id.* Plumb provided Tillett with a band aid. *Id.* The Bremerton Fire Department (BFD) was at the scene and ready to clear the scene when officers requested that Tillett be administered a medical evaluation. *Id.* BFD medically cleared Tillett and left the scene. *Id.* Tillett requested that Sargent get his tea, so Sargent went to garage and retrieved Tillett's tea. *Id.* Tillett did not request any additional aid. *Id.*

Detectives arrested Nancy and Tom Tillett at the scene. *Id.*

Tillett died from causes unrelated to any injuries he alleges were caused by defendants. Koontz Decl., Ex. E at 1:1-3.

## IV. ISSUES PRESENTED

1.  Whether plaintiff's negligent investigation claim should be dismissed when Washington does not recognize a claim for negligent investigation outside of child abuse investigations.

2.  Whether plaintiff's negligent supervision claim should be dismissed when Whatley was not a supervisor.

3.  Whether Whatley is entitled to qualified immunity for plaintiff's 42 USC § 1983 claim when plaintiff's detention was justified pursuant to serving the search warrant and the minimal force used was reasonable under the circumstances.

4.  Whether plaintiff's reasonable care claim should be dismissed when Washington does not recognize a "negligent arrest" claim, defendants did not owe a duty

Defendant Whatley's Motion for Summary
Judgment - 7
C09-5621 RJB

ROGER A. LUBOVICH
BREMERTON CITY ATTORNEY
345 6th Street, Suite 600, Bremerton, Washington  98337
Phone:  360-473-2345  Fax:  360-473-5161

to plaintiff, and Whatley did used reasonable care.

5.     Whether plaintiff's 42 USC § 1985 claim should be dismissed when Tillett does not belong to a racial minority and there is no evidence that Whatley acted with racial discriminatory animus.

6.     Whether plaintiff's outrage claim should be dismissed when Whatley's actions were reasonable under the circumstances.

7.     Whether Grace Tillett's loss of consortium should be dismissed when her husband George Tillett does not have an actionable claim.

### V.   EVIDENCE RELIED UPON

A.     Declaration of Mark E. Koontz;

B.     Declaration of Randy Plumb;

C.     Declaration of Harold Phillip Whatley;

D.     Declaration of Steven Polonsky;

E.     Declaration of Floyd May;

F.     Declaration of Jeffrey Inklebarger; and

G.     Declaration of Keith Sargent.

### VI. AUTHORITY

A.     <u>Summary Judgment Standard.</u>

Summary Judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact which would preclude summary judgment as a matter of law.  Fed. R. Civ. P. 56.  Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to present, by affidavits, depositions, answer to interrogatories, or admissions on file, "specific

Defendant Whatley's Motion for Summary
Judgment - 8
C09-5621 RJB

ROGER A. LUBOVICH
BREMERTON CITY ATTORNEY
345 6th Street, Suite 600, Bremerton, Washington  98337
Phone:  360-473-2345  Fax:  360-473-5161

facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "The mere existence of a scintilla of evidence in support of the non-moving party's opposition is not sufficient." *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In other words, "summary judgment should be granted where the non-moving party fails to offer evidence from which a reasonable [fact finder] could return a [decision] in its favor." *Triton Energy Corp.* at 1220.

      B.    <u>Tillett's claim for negligent investigation should be dismissed because Washington does not recognize such a claim.</u>

      Tillett's first claim in his complaint is for negligent investigation. Washington law does not recognize a cause of action for negligent investigation, unless it is a child abuse investigation:

> In all negligence actions the plaintiff must prove the defendant owed the plaintiff a duty of care. Thus, in general, a claim for negligent investigation does not exist under the common law because there is no duty owed to a particular class of persons. In the area of law enforcement investigation, the duty owed is typically owed to the public. For example, the duty of police officers to investigate crimes is a duty owed to the public at large and is therefore not a proper basis for an individual's negligence claim. *Chambers-Castanes v. King County,* 100 Wash.2d 275, 284, 669 P.2d 451, 39 A.L.R.4th 671 (1983) (holding that the duty to arrest and keep the peace are a duty owed to the public at large and unenforceable as to individuals).

> The Legislature, however, has created a limited exception in the area of child abuse investigations by imposing a duty to investigate for the protection of a specified class. *See Babcock v. State,* 116 Wash.2d 596, 809 P.2d 143 (1991); *444 Corbally v. Kennewick Sch. Dist.,* 94 Wash.App. 736, 740, 973 P.2d 1074; *Lesley v. Department of Social & Health Servs.,* 83 Wash.App. 263, 921 P.2d 1066 (1996). RCW 26.44.050 requires a law enforcement agency or DSHS to investigate possible occurrences of child abuse or neglect. That duty derives from the paramount importance that is

placed on the welfare of the child.

*Rodriguez v. Perez*, 99 Wn.App. 439, 443-444, 994 P.2d 874 (2000).

Tillett's claim involves a narcotics investigation. There is no such exception for narcotics investigations. Since Washington does not recognize such a cause of action, Tillett's claim for negligent investigation should be dismissed.

C.    Tillett's negligent supervision claim is against the City, not Whatley.

Tillett brings a claim against the City for negligent supervision. Whatley incorporates herein the argument in the City's Motion for Summary Judgment related to this claim. It is undisputed that at the time of the incident, Whatley did not supervise any of the officers involved in the narcotics investigation. To the extent Tillett is making a negligent supervision claim against Whatley, the claim should be dismissed.

D.    Whatley is entitled to qualified immunity for Tillett's 42 USC § 1983 claim.

Tillett claims that Whatley violated his Fourth Amendment right to be free from unreasonable searches and seizures. Defendants in a § 1983 action are entitled to qualified immunity from civil damages if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).  The existence of qualified immunity generally turns on the objective reasonableness of the officers' actions, without regard to the knowledge or subjective intent of the particular officer.  *Id*. at 819.  Whether a reasonable officer could have believed his or her conduct was proper is a question of law for the court and should be determined at the earliest possible point in litigation.  *ActUp!Portland*, 988 F.2d 868, 873 (9th Cir. 1993).

In analyzing a qualified immunity defense, the court must determine: 1) whether a

Defendant Whatley's Motion for Summary
Judgment - 10
C09-5621 RJB

ROGER A. LUBOVICH
BREMERTON CITY ATTORNEY
345 6th Street, Suite 600, Bremerton, Washington 98337
Phone:  360-473-2345  Fax:  360-473-5161

constitutional right would have been violated on the facts alleged, taken in the light most favorable to the party asserting the injury; and 2) whether the right was clearly established when viewed in the specific context of the case. *Saucier v. Katz*, 533 U.S. 194, 205, 121 S.Ct. 215, 150 L.Ed.2d 272 (2001)[6]. In the second step the court decides if the officers made a reasonable mistake about what the law requires. *Kennedy v. Ridgefield*, 411 F.3d 1134, 1142 (9th Cir. 2005).

      1.   <u>The search of the residence was legal because it was authorized by a valid search warrant.</u>

A Kitsap County Superior Court search warrant authorized Whatley and the other defendants to enter the 1718 Sheridan Road residence to search for evidence of Violations of the Uniform Controlled Substance Act, RCW 69.50.401. The Ninth Circuit recognizes a cause of action under § 1983 against an officer who applies for a search warrant where a reasonably well-trained officer would have known that the application for the warrant did not establish probable cause. *Millender v. County of Los Angeles*, 620 F.3d 1016, 1032 (9th Cir. 2010). However, it must be more than a warrant merely lacking probable cause:

> In interpreting these precedents, we have emphasized the "distinction between warrants with disputable probable cause and warrants so lacking in probable cause that no reasonable officer would view them as valid." *KRL,* 512 F.3d at 1190; *see also United States v. Shi,* 525 F.3d 709, 731 (9th Cir.) ("Good faith reliance exists if the agents' affidavit establishes 'at least a colorable argument' for probable cause, and the agents relied on the search warrant in an objectively reasonable manner." (quoting *United States v. Luong,* 470 F.3d 898, 903 (9th Cir.2006))), *cert. denied,* --- U.S. ----, 129 S.Ct. 324, 172 L.Ed.2d 234 (2008). Where the "lack of probable

---

[6] The Supreme Court in *Pearson v. Callahan*, -- U.S. --, 129 S.Ct. 808, 818, 172 L.Ed.2d 565 (2009) authorized district courts to consider the "clearly established" prong first if the court so desires: "On reconsidering the procedure required in *Saucier,* we conclude that, while the sequence set forth there is often appropriate, it should no longer be regarded as mandatory. The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." 129 S.Ct. 808, 818. Defendants analyze whether there has been a constitutional violation first because that resolves the issue of qualified immunity

Defendant Whatley's Motion for Summary Judgment - 11
C09-5621 RJB

cause was so obvious that any reasonable officer reading the warrant would conclude that the warrant was facially invalid," we have held that "[a]pproval by an attorney and a magistrate did not justify reasonable reliance." *KRL*, 512 F.3d at 1192 (citing *Kow*, 58 F.3d at 428-29).

*Millender* at 1033.

In our case, Whatley did not apply for the warrant, he was relying on Detective Polonsky for probable cause. An officer is entitled to rely on all reasonably reliable information provided to him by law enforcement officers. *Motley v. Parks*, 432 F.3d 1072, 1081-82. (9th Cir. 2005). Polonsky applied for the warrant and told Whatley that there was probable cause for the search. Polonsky Decl., Ex. C; Whatley Decl., Ex. A at 1.

Moreover, Polonsky had probable cause to search 1718 Sheridan Road as evidenced in the complaint for search warrant and the search warrant itself. *See* Declaration of Steven Polonsky in Support of Defendant Steven Polonsky's Motion for Summary Judgment, Exhibits A, B and C. Polonsky testified in his complaint for a search warrant that a police operative had conducted a controlled purchase of methamphetamine from a resident of 1718 Sheridan Road on September 4, 2010. *Id*. Clearly, this established probable cause to search 1718 Sheridan Road for evidence of the possession and delivery of methamphetamine.

Tillett may argue that the area where Whatley detained Tillett was in the attached garage of the residence and the search warrant did not specifically authorize a search of the attached garage. However, that argument fails. "A warrant to search a residence automatically authorizes the search of an attached garage because '[n]o reason exists to distinguish an attached garage from the rest of the residence for Fourth Amendment purposes.'" *U.S. v. Gorman*, 104 F.3d 272, 274 (9th Cir. 1996), citing *United States v. Frazin,* 780 F.2d 1461, 1467 (9th Cir. 1986). The garage was an attached to the house. Koontz Declaration, Ex. B at 152:14-17.

Whatley's search of 1718 Sheridan Road did not violate Tillett's constitutional rights.

Defendant Whatley's Motion for Summary
Judgment - 12
C09-5621 RJB

2.   Whatley's seizure of Tillett was legal because Tillett was an occupant of a residence being served a search warrant.

The controlling case is *Muehler v. Mena*, 544 U.S. 93, 125 S.Ct. 1465, 161 L.Ed.2d 299 (2005). In *Muehler*, law enforcement officers were issued a search warrant for a house thought to have been inhabited by gang members. *Id*. at 95. During the service of the warrant, the officers detained inhabitants of the home, including the plaintiff. *Id*. at 95. The plaintiff was asleep when the warrant was served, and there is no evidence that she resisted or in any way failed to follow the commands of the officers. *Id*. at 96. The officers pointed a gun at the plaintiff, handcuffed her, and detained her for two to three hours while she remained in handcuffs. *Id*. at 96, 100. The Court held that the officers' use of force was reasonable under the circumstances because the "inherently dangerous situation" justified the "marginal intrusion". *Id.* at 99-100.

The *Muehler* Court followed *Michigan v. Summers*[7] which held that officers serving a search warrant may detain occupants of a residence subject to a search warrant:

> In *Michigan v. Summers,* 452 U.S. 692, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981), we held that officers executing a search warrant for contraband have the authority "to detain the occupants of the premises while a proper search is conducted." *Id.,* at 705, 101 S.Ct. 2587. Such detentions are appropriate, we explained, because the character of the additional intrusion caused by detention is slight and because the justifications for detention are substantial. *Id.,* at 701-705, 101 S.Ct. 2587. We made clear that the detention of an occupant is "surely less intrusive than the search itself," and the presence of a warrant assures that a neutral magistrate has determined that probable cause exists to search the home. *Id.,* at 701, 101 S.Ct. 2587. Against this incremental intrusion, we posited three legitimate law enforcement interests that provide substantial justification for detaining an occupant: "preventing flight in the event that incriminating evidence is found"; "minimizing the risk of harm to the officers"; and facilitating "the orderly completion of the search," as detainees' "self-interest may induce them to open locked doors or locked containers to avoid the use of force." *Id.,* at 702-703, 101 S.Ct. 2587.

---

[7] 452 U.S. 692, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981).

…An officer's authority to detain incident to a search is categorical; it does not depend on the "quantum of proof justifying detention or the extent of the intrusion to be imposed by the seizure." *Id.,* at 705, n. 19, 101 S.Ct. 2587.

*Muehler v. Mena*, 544 U.S. 93, 98, 125 S.Ct. 1465, 1469 - 1470 (2005).

In our case, the Bremerton detectives were investigating a narcotics dealing. "[T]he execution of a warrant to search for drugs 'may give rise to sudden violence or frantic efforts to conceal or destroy evidence'". *Muehler* at 100, citing *Summers* at 702-703.

In *Summers*, Detroit police officers obtained a warrant to search a residence for evidence of narcotics possession. *Summers* at 693. While the officers did not have a warrant to arrest any of the residents, eight residents were detained while the officers searched the home in accordance with the search warrant. *Id.* at 693, n.1. The police located heroine in the basement, arrested the owner of the home, and in a search incident to the arrest, located heroine on the owner. *Id.* at 693. The owner was charged with possession of heroine and moved to suppress, arguing that the officers violated his Fourth Amendment right against unreasonable seizures when he was detained during the service of the search warrant. *Id.* at 694. The Supreme Court held that the officers did not violate the owner's constitutional rights because the detention was necessary to properly serve the search warrant – a warrant that had been issued by a judge based on probable cause:

Of prime importance in assessing the intrusion is the fact that the police had obtained a warrant to search respondent's house for contraband. A neutral and detached magistrate had found probable cause to believe that the law was being violated in that house and had authorized a substantial invasion of the privacy of the persons who resided there. The detention of one of the residents while the premises were searched, although admittedly a significant restraint on his liberty, was surely less intrusive than the search itself. Indeed, we may safely assume that most citizens-unless they intend flight to avoid arrest-would elect to remain in order to observe the search of their possessions. Furthermore, the type of detention imposed here is not likely to be exploited by the officer or unduly prolonged in order to gain more information, because the information the officers seek normally will be obtained through the search and not through the detention.

ROGER A. LUBOVICH
BREMERTON CITY ATTORNEY
345 6th Street, Suite 600, Bremerton, Washington 98337
Phone: 360-473-2345  Fax: 360-473-5161

*Summers* at 701-702.

The fact that Tillett was not the subject of the City's narcotics investigation is not relevant to the issue of whether the officers could detain Tillett. All of the occupants of the residence may be detained (owners, residents, guests, anyone) in order to serve the warrant. The *Summers* Court held that the mere fact that the occupant was in a residence that a judge found probable cause to search for narcotics was sufficient to justify the occupant's detention during the search of the house:

> It is also appropriate to consider the nature of the articulable and individualized suspicion on which the police base the detention of the occupant of a home subject to a search warrant. We have already noted that the detention represents only an incremental intrusion on personal liberty when the search of a home has been authorized by a valid warrant. *The existence of a search warrant, however, also provides an objective justification for the detention*. A judicial officer has determined that police have probable cause to believe that someone in the home is committing a crime. Thus a neutral magistrate rather than an officer in the field has made the critical determination that the police should be given a special authorization to thrust themselves into the privacy of a home. The connection of an occupant to that home gives the police officer an easily identifiable and certain basis for determining that suspicion of criminal activity justifies a detention of that occupant.
>
> . . .
>
> If the evidence that a citizen's residence is harboring contraband is sufficient to persuade a judicial officer that an invasion of the citizen's privacy is justified, it is constitutionally reasonable to require that citizen to remain while officers of the law execute a valid warrant to search his home. Thus, for Fourth Amendment purposes, we hold that a warrant to search for contraband founded on probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted.

*Summers* at 703-705.

The *Muehler* Court reiterated that the occupant being detained need not be the suspect of the investigation because it is the residence that is being searched, not a particular individual:

> In finding the officers should have released Mena from the handcuffs, the

1
2
3
4

Court of Appeals improperly relied upon the fact that the warrant did not include Mena as a suspect. See *Mena v. Simi Valley,* 332 F.3d 1255, 1263, n. 5 (C.A.9 2003). The warrant was concerned not with individuals but with locations and property. In particular, the warrant in this case authorized the search of 1363 Patricia Avenue and its surrounding grounds for, among other things, deadly weapons and evidence of street gang membership.

5

*Muehler* at 100, n.2.

6
7
8
9
10
11
12
13
14

In our case, Tillett was an occupant of the residence. A Kitsap County Superior Court Judge had found probable cause to search the residence and issued a search warrant. While serving the search warrant, Whatley encountered Tillett, an occupant of the residence, and detained Tillett. Tillett was taken out of the residence, and Whatley continued to search the residence. Other officers removed Tillett's wrist restraints, provided a chair to Tillett, and retrieved Tillett's cup of tea for him. All of this was done prior to the completion of the search of the residence, even though the officers could have detained Tillett during the duration of the search. Under *Summers* and *Meuhler*, Whatley clearly had authority to detain Tillett.

15
16
17

> 3.    Whatley's minimal use of force was reasonable under the circumstances because Tillett was verbally and physically refusing to comply with Whatley's legal commands and the minimal force Whatley used was necessary to detain Tillett.

18
19
20
21
22
23
24
25
26

Tillett also alleges that the degree of force Whatley used to detain Tillett was unreasonable. Under the Fourth Amendment, officers may only use such force as is "objectively reasonable" under the circumstances. *Graham v. Connor*, 490 U.S. 386, 397, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). In order to determine whether the force used was reasonable, courts balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham* at 396. "The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 hindsight." *Id*. at 396.

Defendant Whatley's Motion for Summary
Judgment - 16
C09-5621 RJB

Reasonableness may be decided as a matter of law if, in resolving all factual disputes in favor of the plaintiff, the officer's force was objectively reasonable under the circumstances. *Liston v. County of Riverside*, 120 F.3d 965, 976 n.10 (1997). In determining whether the force used was reasonable, the court must pay "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham* at 396. However, the court's consideration of reasonableness "must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation". *Id*. at 396-97.

   a. <u>Whatley's pointing his firearm at Tillett was reasonable under the circumstances.</u>

While Whatley was clearing the residence of its occupants, Tillett opened a door. Whatley saw Tillett and pointed his firearm at Tillett and told him to get on the ground. Tillett refused, said "No", and started backing into the room. At that point Whatley lowered his firearm and did not point the firearm at Tillett on any other occasion.

Courts have held that when an officer reasonably believes that force is necessary to protect his safety or the safety of others, it is not an unreasonable use of force to point a gun at a person. *See U. S. v. Taylor*, 716 F.2d 701 (9th Cir. 1983); *see also U. S. v. Jacobs*, 715 F.2d 1343 (9th Cir. 1983). As stated in *Summers*, the service of search warrant for evidence of narcotics is an inherently dangerous activity. *Summers* at 702-703. In *Muehler*, the officers detained the plaintiff at gunpoint. *Muehler* at 100. The Court held that the seizure was reasonable under the Fourth Amendment. Like the officers in *Muehler*, Whatley's

Defendant Whatley's Motion for Summary
Judgment - 17
C09-5621 RJB

ROGER A. LUBOVICH
BREMERTON CITY ATTORNEY
345 6th Street, Suite 600, Bremerton, Washington 98337
Phone: 360-473-2345 Fax: 360-473-5161

pointing his firearm at Tillett briefly in order to detain him was a reasonable use of force.

> b.  Whatley's physical contact with Tillett was reasonable under the circumstances because the degree of force was minimal, Tillett was actively attempting to avoid detention and Tillett posed a threat to the safety of Whatley and his fellow officers.

The first physical contact Whatley made with Tillett was after Tillett fell backward into a sitting position. Tillett was wearing a jacket that was capable of concealing a weapon. Tillett had been verbally and physically preventing Whatley's attempt to detain Tillett. Tillett had retreated into a room where Whatley believed Tillett may have been able to arm himself and harm Whatley or his fellow officers. Whatley reached to grab Tillett, but Tillett continued to walk backward into the room. Tillett fell backward into a sitting position. Tillett was seated on some equipment. Whatley then placed his hand on Tillett's jacket while telling Tillett to lie on the ground. Tillett again verbally and physically resisted. Whatley then pulled Tillett to the ground. Detective Inklebarger came to assist Whatley. Tillett tucked his arm under his body, so Whatley could not place wrist restraints on Tillett. Whatley grabbed Tillett's elbow and pulled it out from under Tillett. Whatley and Inklebarger placed wrist restraints on Tillett. For the first time Tillett told the officers that his hand was broken from a previous incident. Inklebarger double-locked the handcuffs to make sure that the restraints would not aggravate Tillett's pre-existing hand injury. Tillett was escorted from the residence. That is the extent of the physical contact that Whatley, or any other officer, had with Tillett.

As stated above, the court must pay "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham* at 396. In an

excessive force claim, the Ninth Circuit requires that the Court also first assess "the quantum of force used to arrest [the plaintiff]"[8] because the "factors articulated in *Graham*, and other factors bearing on the reasonableness of a particular application of force are not to be considered in a vacuum but only in relation to the amount of force used to effect a particular seizure."[9]

In our case, the quantum force Whatley used was extremely low. Whatley grabbed Tillett's coat and took him to the ground. Whatley did not slam Tillett to the ground; he did not strike Tillett; he did not kick him. Whatley simply used enough force to take Tillett to the ground in a controlled manner. Tillett did not complain of any injury or pain after he went to the ground. Instead, Tillett tucked his arm under his body preventing Whatley from handcuffing Tillett. Whatley grabbed Tillett's elbow with enough force to get Tillett's arm out from underneath him. Whatley and Inklebarger placed hand restraints on Tillett. It was only then that Tillett made any indication of an injury – he notified the officers that he had a broken hand from a prior incident. There is no evidence that Whatley used any significant force against Tillett.

Against that backdrop, the Court applies the Graham factors. First, the severity of the crime that Whatley is investigating is serious – the delivery of narcotics, a felony. This factor weighs in favor of Whatley.

Second, Tillett posed an immediate threat to Whatley as soon as Tillett opened the door. The officers had made numerous announcements that they were police officers serving a search warrant. Tillett was wearing a coat that could conceal a weapon, and his hands were at his side close to where a weapon could be concealed. Whatley identified himself as police and told Tillett to get to the ground. Tillett verbally and physically

---

[8] *Davis v. City of Las Vegas*, 478 F.3d 1048, 1054 (9th Cir. 2007), citing *Deorle v. Rutherford,* 272 F.3d 1272, 1279-80 (9th Cir. 2001).
[9] *Davis* at 1055, citing *Graham* at 701.

Defendant Whatley's Motion for Summary
Judgment - 19
C09-5621 RJB

refused and started to retreat back in the room. Whatley was concerned that if Tillett went into the room, he would have access to a weapon, putting Whatley and his fellow officers in danger. Until Whatley could detain Tillett, he remained a threat to Whatley. This factor also weighs heavily in favor of Whatley.

Third, Tillett was actively and verbally resisting Whatley's efforts to detain him. When Whatley first saw Tillett, Whatley identified himself as a police officer and told Tillett to get to the ground. Tillett refused, and said "No!" Tillett began to retreat into the room. Whatley reached for Tillett's coat, and Tillett continued to back up. Whatley grabbed Tillett's coat and told Tillett to lie on the ground. Tillett again refused physically verbally, yelling "No!" and trying to pull away from Whatley. Whatley was finally able to get Tillett to the ground in a controlled manner. Then, Tillett tucked his arm under his body preventing Whatley from handcuffing him. From the time Whatley first saw Tillett until the time Tillett was in hand restraints, Tillett physically and verbally resisted Whatley's legal detention of Tillett. This factor weighs heavily in favor of Whatley as well.

All of the *Graham* factors weigh heavily in favor of Whatley, especially considering the very minimal degree of force used against Tillett. The circumstances in this case justified Whatley's minimal use of force. Tillett's claim of excessive force should be dismissed.

> c.   <u>The use of wrist restraints on Tillett was reasonable under the circumstances.</u>

*Muehler* is also instructive regarding the use of wrist restraints (or handcuffs) during the service of a search warrant. In *Muehler*, the officers handcuffed the plaintiff when they detained her during search. She remained handcuffed during the entire two to three hour search. *Muehler* at 99. The Court held that the officers' actions in handcuffing her (and keeping her handcuffed for two to three hours) was reasonable because the two to three hour detention in handcuffs did not outweigh "the government's continuing safety interest" while

Defendant Whatley's Motion for Summary
Judgment - 20
C09-5621 RJB

ROGER A. LUBOVICH
BREMERTON CITY ATTORNEY
345 6th Street, Suite 600, Bremerton, Washington 98337
Phone: 360-473-2345  Fax: 360-473-5161

the residence was searched. *Muehler* at 100.

In our case, Tillett was handcuffed for approximately five minutes. He was provided a chair on which to sit. He was offered medical aid on multiple occasions, which he finally accepted. He was cleared by aid. Finally, he was provided his tea to sip while waiting for the officers to finish serving the search warrant. The use of hand restraints for five minutes was not unreasonable under the circumstances.

Tillett cannot make a claim for unreasonable seizure under 42 USC § 1983. His claim should be dismissed.

E.    Tillett's claim for failure to use reasonable care should be dismissed because there is no such cause of action for "negligent arrest" and Whatley's actions were reasonable under the circumstances.

No Washington Court has recognized a cause of action for negligent arrest. When a negligence claim is brought against a government entity, the public duty doctrine applies. The public duty doctrine requires a plaintiff to show that the government had a duty specifically to him, as opposed to the public at large. In order to make such a showing, a plaintiff must show one of four exceptions to the public duty doctrine. One exception is the "legislative intent" exception, "when the terms of a legislative enactment evidence an intent to identify and protect a particular and circumscribed class of persons." *Bailey v. Town of Forks*, 108 Wn.2d 262, 268, 737 P.2d 1257 (1987).  The second exception is the "failure to enforce" exception, where "(1) governmental agents responsible for enforcing statutory requirements (2) possess actual knowledge of a statutory violation, fail to take corrective action despite a statutory duty to do so, and (3) the plaintiff is within the class the statute intended to protect".  *Honcoop v. State,* 111 Wash.2d 182, 190, 759 P.2d 1188 (1988).  The third exception is the "rescue doctrine", which is applied "when governmental

Defendant Whatley's Motion for Summary
Judgment - 21
C09-5621 RJB

ROGER A. LUBOVICH
BREMERTON CITY ATTORNEY
345 6th Street, Suite 600, Bremerton, Washington 98337
Phone: 360-473-2345  Fax: 360-473-5161

agents fail to exercise reasonable care after assuming a duty to warn or come to the aid of a particular plaintiff". *Bailey* at 268.  The fourth exception is where the government agency has created a "special relationship" with the plaintiff, wherein the plaintiff must show "(1) there is direct contact or privity between the public official and the injured plaintiff which sets the latter apart from the general public, and (2) there are express assurances given by a public official, which (3) give rise to justifiable reliance on the part of the plaintiff". *Honcoop* at 192.

In *Vergeson v. Kitsap County*, 145 Wn.App. 526, 186 P.3d 1140 (2008), Ms. Vergeson was arrested by Washington State Partol on an arrest warrant that had been quashed by a Kitsap County Superior Court Judge months earlier. Bremerton and Kitsap County had certain responsibilities with respect reporting the quashed warrant to the state and national databases used by law enforcement. The County sought to remove the warrant from the databases. However, due in part to Ms. Vergeson's several aliases, the warrant was not removed from the databases. Ms. Vergeson was pulled over by Washington State Patrol and arrested on the warrant that had been quashed but not removed from the databases. She filed suit against the county and the city.

The court held that the plaintiff must show that the County and the City employees owed her a duty. Since she could not satisfy any of the exceptions to the public duty doctrine, the trial court granted the City and County's motions for summary judgment. The Court of Appeals affirmed.

In our case, Tillett does not fall into any one of the four exceptions to the public duty doctrine. Therefore, the City and its employees owed no duty to Tillett. Tillett's claim for failure to use reasonable care should be dismissed.

1     Moreover, as shown in above, Whatley's actions were reasonable under the

2 circumstances. *Muehler* and *Summers* clearly provide Whatley the authority to detain

3 Tillett and use the force necessary to detain him.

4     F.     <u>Tillett's 42 USC § 1985 claim should be dismissed because, among other</u>

5           <u>things, Whatley did not act with racial animus.</u>

6     Tillett brings a claim under 42 U.S.C. § 1985(3) alleging that defendants conspired

7 for the purpose of depriving Tillett's equal protection of the laws and of equal privileges

8 and immunities. This Court recently laid out the elements of a claim under 42 U.S.C. §

9 1985(3):

10

11     To bring a claim successfully under section 1985(3), a plaintiff must allege
      and prove four elements:

12

13     (1) conspiracy, (2) for the purpose of depriving, either directly or indirectly,
      any person or class of persons of the equal protection of the laws, or of equal
      privileges and immunities under the laws, and (3) an act in furtherance of the
14     conspiracy; (4) whereby a person is either injured in his person or property
      or deprived of any right or privilege of a citizen of the United States.

15

16     [*Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1536 1992 (9th Cir.)] (*internal
      citations omitted* ). "Further, the second of these four elements requires that
17     in addition to identifying a legally protected right, a plaintiff must
      demonstrate a deprivation of that right motivated by some racial, or perhaps
18     otherwise class-based, invidiously discriminatory animus behind the
      conspirators' action." *Id.*

19

20 *Curow-Ray v. City of Tumwater*, WL 3222505, 12 -13 (W.D.Wash., August 12, 2010).

21     Tillett is a White male. There is no evidence that Whatley's actions, or those of any

22 other officer, were motivated by race or other class-based invidiously discriminatory

23 animus. Tillett's claim under 42 U.S.C. § 1985 should be dismissed.

24     G.     <u>Tillett's claim for outrage should be dismissed because his actions were not</u>

25           <u>atrocious and utterly intolerable in a civilized community.</u>

26     The tort of outrage, requires that the plaintiff prove three elements: 1) extreme and

Defendant Whatley's Motion for Summary
Judgment - 23
C09-5621 RJB

ROGER A. LUBOVICH
BREMERTON CITY ATTORNEY
345 6th Street, Suite 600, Bremerton, Washington  98337
Phone:  360-473-2345  Fax:  360-473-5161

outrageous conduct, 2) intentional or reckless infliction of emotional distress, and 3) actual result to the plaintiff of severe emotional distress. *Dicomes v. State*, 113 Wn.2d 612, 630, 782 P.2d 1002 (1989), citing *Rice v. Janovich*, 109 Wn.2d 48, 61, 742 P.2d 1230 (1987).

Plaintiff cannot meet the first element:

> The conduct in question must be "*so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.*" The question of whether certain conduct is sufficiently outrageous is ordinarily for the jury, but it is initially for the court to determine if reasonable minds could differ on whether the conduct was sufficiently extreme to result in liability.

*Dicomes* at 630 (internal citations omitted) (emphasis in original).

In our case, Whatley acted legally. He used reasonable force in effecting a lawful detention. Tillett's claim of outrage should be dismissed.

H.    <u>Grace Tillett's loss of consortium claim should be dismissed because Whatley did not tortiously cause injury to Mr. Tillett.</u>

Grace Tillett brings a loss of consortium claim against defendants. Her claim is based on the allegation that defendants tortiously caused injury to her husband, George Tillett. Since Mr. Tillett's claims are not actionable, Mrs. Tillett's loss of consortium claim should be dismissed.

## VII.    CONCLUSION

For the reasons set forth above, plaintiffs' claims should be dismissed.

DATED this 18th day of November, 2010.

ROGER A. LUBOVICH
Bremerton City Attorney

By: <u>s/ Mark E. Koontz</u>
Mark E. Koontz, WSBA #26212
Attorney for Defendants

ROGER A. LUBOVICH
BREMERTON CITY ATTORNEY
345 6th Street, Suite 600, Bremerton, Washington  98337
Phone: 360-473-2345  Fax: 360-473-5161