UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

GEORGE A. TILLETT, et al.,

              Plaintiffs,

      v.

CITY OF BREMERTON, et al.,

              Defendants.

Case No.  09-5621RJB

ORDER GRANTING
DEFENDANTS' MOTIONS FOR
SUMMARY JUDGMENT

      This matter comes before the Court on Defendants Harold Philip Whatley, City of Bremerton, Roy Alloway, Jeffery Inklebarger, Floyd May, Randy Plumb, Steven Polonsky, and Keith Sargent's Motions for Summary Judgment (Dkts. 25-32).  The Court has considered the motions, responses, and the relevant documents herein.

## I. FACTUAL AND PROCEDURAL BACKGROUND

      On October 5, 2009, Plaintiffs George Tillett and his wife, Grace Tillett, filed a complaint against eight Defendants: Whatley, City of Bremerton, Alloway, Inklebarger, May, Plumb, Polonsky, and Sargent alleging negligent investigation, negligent supervision, violation of Plaintiff George Tillett's civil rights under 42 U.S.C. § 1983 and § 1985, negligent arrest, the tort of outrage, and "loss of consortium."  Dkt. 1.  Plaintiffs allege that, while Defendants were

serving a search warrant, the Defendants violated George Tillett's constitutional rights by using excessive force in his detention.

On November 18, 2010, Defendants separately filed motions for summary judgment. Dkts. 25-32.  The Court addresses the motions together in this order.

**A.  FACTS**

The Bremerton Police Department has a division called the Special Operations Group ("SOG").  In September 2008, Plumb, Polonsky, Inklebarger, Whatley, May, Alloway, and Rachel Lepovetsky were members of the SOG.

On September 3, 2008, SOG detective Polonsky conducted a controlled buy of methamphetamine using a Police Operative (P.O.).  Under the surveillance of the SOG detectives, the P.O. purchased methamphetamine from Erik McShepard at 1718 Sheridan Road, Bremerton, Washington ("1718 Sheridan").  The residence was owned by Tom Tillett and his wife, Nancy Tillett.  Tom Tillett is the son of George Tillett, the Plaintiff.

On September 8, 2008, Polonsky presented a complaint for a search warrant for 1718 Sheridan to Kitsap County Superior Court Judge Jay Roof.  Probable cause was found and a search warrant was issued for a residence located at 1718 Sheridan.  The warrant authorized any peace officer to search the 1718 Sheridan residence in order to seize evidence related to violations of RCW 69.50.401, Violation of the Uniform Controlled Substance Act ("VUCSA").

On September 10, 2010, the SOG of the Bremerton Police Department served the search warrant.  Dkt. 25, p. 4.  In preparation for serving the search warrant, Polonsky held a briefing with the members of the SOG informing them of the probable cause, the search warrant, and their responsibilities.  Polonsky informed the SOG detectives that the P.O. had told Polonsky that there was a business selling auto parts out of an attached garage.

1    The SOG detectives involved in entering 1718 Sheridan were Polonsky, Whatley, Plumb,

2    Inklebarger, Lepovetsky, and May.  Detective Alloway was assigned surveillance duties and

3    assisting with persons detained.  Patrol officers, including Defendant Keith Sargent, did not

4    make entry into the residence but were in charge of covering the residence and assisting with

5    persons detained.

6    SOG detectives arrived at 1718 Sheridan wearing clothing that clearly displayed the word

7    "police" on the front and above each arm.  When the entry team was at the door to the house,

8    Polonsky knocked on the door and shouted "Police, Search Warrant" several times.  There was

9    no response from anyone inside the building.  Polonsky, Whatley, Plumb, Inklebarger,

10   Lepovetsky, and May entered the house.  As the detectives moved throughout the house, they

11   shouted loudly, "Police with a search warrant."  Several occupants were detained and taken out

12   of the residence to allow the detectives to safely and efficiently search the residence pursuant to

13   the search warrant.

14   Whatley was clearing the house when he came to a stairway which led down into a

15   garage.  At the bottom of the stairs, Whatley observed a closed door.  Whatley did not know if

16   anyone was behind the closed door.  Whatley stayed at the door to ensure the safety of the other

17   SOG members while they continued the search.

18   The closed door, which was covered by Whatley, was suddenly opened by a male

19   wearing a gray coat.  The male was later identified as Plaintiff George Tillet (hereafter "Tillett").

20   Whatley pointed his rifle at Tillett and yelled, "Police get on the ground."  According to

21   Whatley, Tillett refused and said, "no."  Tillett retreated back into the room from which he came.

22   Whatley reached out to grab Tillet's coat, but Tillett backed away from Whatley.  Tillett

23   continued to back into the room and away from Whatley.  Whatley states that Tillett fell into a

24

ORDER - 3

sitting position as he backed away.  Whatley grabbed Tillett by the coat and again told Tillett to lie on the ground.  Whatley states that Tillett refused and continued to resist.  Whatley placed Tillett on his stomach by using Tillett's coat.  Inklebarger then arrived to assist Whatley.

Inklebarger and Whatley attempted to place hand restraints on Tillett.  Tillett tucked his left arm under his body to prevent the officers from placing restraints on him.  The officers were able to get Tillett's hands behind his back and place restraints on him.  Tillett yelled that his hand had been broken.

During the detention, Inklebarger noticed that Tillett had a small laceration on his right wrist.  Inklebarger checked the tightness of the restraints in order to ensure that the restraints did not come in contact with the laceration.  Inklebarger also "double-locked" the restraints to ensure they did not tighten.

Tillett was assisted to his feet, and Inklebarger and Plumb escorted him outside.  Outside, Tillett asked Patrol Officer Sargent if he could sit down.  Sargent removed the restraints and provided a chair for Tillett.  The hand restraints were on for approximately five minutes.  Sargent and other officers repeatedly asked Tillett if he wanted to receive medical aid, but Tillett declined.  Plumb provided a bandage for Tillett's laceration.  Officers requested that the Bremerton Fire Department ("BFD") administer a medical evaluation.  BFD medically cleared Tillet and left the scene.  Tillett requested that Sargent get his tea.  Sargent went to the garage and retrieved Tillett's tea.  Tillett did not request any additional aid.

Tillett died from causes unrelated to any injuries he alleges were caused by Defendants. Dkt. 25, p. 7.

**B. DEFENDANTS' VERSION OF DISPUTED EVENTS**

Defendants state that service of a search warrant at a residence where narcotics are being

1  sold is "extremely high risk" because drug dealers often have weapons to protect themselves and

2  their investment in narcotics.

3     Defendants state that Whatley was concerned for his safety and the safety of the other

4  officers for several reasons: (1) the officers had been repeatedly shouting that the police were

5  present and had a warrant, yet Tillett had concealed himself behind the door, (2) serving a search

6  warrant on a residence is a dangerous activity, (3) Tillett was wearing a bulky gray coat capable

7  of concealing a weapon, and (4) Tillett's hands were down at this side (as opposed to up in the

8  air) where a weapon could be concealed.  Dkt. 25, p. 5-6.  Whatley believed that it was safer for

9  himself and the other detectives to detain Tillett rather than permit Tillett to go into the room that

10  was not secured by the SOG members.  Dkt. 25, p. 6.  Whatley believed that Tillett could arm

11  himself and create a greater risk to the other SOG members.  *Id*.

12     Defendants allege that Tillett had injured his right hand prior to the service of the search

13  warrant.  Dkt. 25, p. 6.

14  **C. PLAINTIFFS' VERSION OF DISPUTED EVENTS**

15     Plaintiffs assert that the service of the search warrant was not a "high risk entry" as

16  demonstrated by the "high risk check list" used by the Defendants.  Dkt. 49, p. 3.  Plaintiffs

17  allege that the plan for the raid was to enter the building through the front door and that the

18  alternate plan was to enter through the garage.  *Id*.  Plaintiffs state that Whatley saw a male

19  suspect enter the garage prior to the entry into the residence.  *Id*.  Plaintiffs state that on the way

20  into the residence, three officers saw a male suspect, later identified as Tillett, enter through a

21  doorway.  *Id*.  Plaintiffs allege that none of the officers attempted to detain that person or enter

22  the house through the garage as was their alternative plan.  Dkt. 49, p. 3-4.

23     Plaintiffs state that Tillett was not acting in an aggressive nature but was resisting in such

24

1   a way as to convince Inklebarger Tillett did not want to be touched.  Dkt. 49, p. 4-5.

2        Plaintiffs allege that Tillett had not informed his son, Tom, that he had broken his hand.

3   Dkt. 49, p. 5.  Plaintiffs allege that Tom had observed his father using the hand without pain.  *Id*.

4   Plaintiffs allege that officers forcefully escorted Tillett out of the garage and that one of the

5   officers was holding Tillett's arm in such a way as to cause him great pain.  *Id*.

6        Plaintiffs allege that several officers expressed concern at Whatley's use of force against

7   Tillett.  Dkt. 49, p. 6.  Plaintiffs allege that Whatley attempted to justify his use of force by

8   referencing his SWAT training.  *Id*.  Plaintiffs allege that Plumb felt that Whatley's explanation

9   was inadequate.  *Id*.  Plaintiffs allege that there were other options in dealing with Tillett.  *Id*.

10                              **II. DISCUSSION**

11        Summary judgment is appropriate when, viewing facts in the light most favorable to the

12   nonmoving party, there is no genuine issue of material fact which would preclude summary

13   judgment at a matter of law.  Fed.R.Civ.P. 56.  Once the moving party has satisfied its burden, it

14   is entitled to summary judgment if the non-moving party fails to present, by affidavits,

15   depositions, answer to interrogatories, or admissions on file, "specific facts showing that there is

16   a genuine issue for trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  "The mere

17   existence of a scintilla of evidence in support of the non-moving party's opposition is not

18   sufficient."  *Triton Energy Corp. v. Square D Co*., 68 F.3d 1216, 1221 (9th Cir. 1995).  Factual

19   disputes whose resolution would not affect the outcome of the suit are irrelevant to the

20   consideration of a motion for summary judgment.  *Anderson v. Liberty Lobby, Inc*., 477 U.S.

21   242, 248 (1986).  Summary judgment "should be granted where the non-moving party fails to

22   offer evidence from which a reasonable [factfinder] could return a [decision] in its favor."  *Triton*

23   *Energy Corp*. at 1220.

24

1    "The task of a federal court in a diversity action is to approximate state law as closely as

2    possible in order to make sure that the vindication of the state right is without discrimination

3    because of the federal forum."  *Gee v. Tenneco, Inc.*, 615 F.2d 857, 861 (9th Cir. 1980).  Where

4    the state's highest appellate court has not spoken on an issue, the federal court's role is to predict

5    what decision the state's highest court would reach.  *See Evanston Ins. Co. v. OEA, Inc.*, 566

6    F.3d 915, 921 (9th Cir. 2009).  A federal court uses "intermediate appellate court decisions,

7    decisions from other jurisdictions, statutes, treatises, and restatements as guidance" to predict

8    how the state's highest court would rule.  *Assurance Co. of Am. v. Wall & Assocs. LLC of*

9    *Olympia*, 370 F.3d 557, 560 (9th Cir. 2004).  A federal court will follow the decisions of state

10    intermediate appellate courts unless there is "convincing evidence" that the state's highest court

11    would decide the issue differently.  *Id.*

12    Plaintiffs are claiming in their complaint negligent investigation, negligent supervision,

13    violation of Tillett's civil rights under 42 U.S.C. § 1983 and § 1985, negligent arrest, outrage,

14    and "loss of consortium."  Defendants are seeking dismissal of all the claims.  The Court will

15    address each claim in turn.

16    **A.  NEGLIGENT INVESTIGATION**

17    Defendants assert that Plaintiffs' claims for negligent investigation should be dismissed

18    because negligent investigation is not a recognized cause of action under Washington law, unless

19    it is a child abuse investigation.  Dkt. 25, p. 9.  Plaintiffs do not oppose Defendants City of

20    Bremerton, Whatley, Inklebarger, Polonsky, and Sargent's motions for summary judgment on

21    this issue.  Dkts. 48, p. 6; 49, p. 6; 50, p. 6; 51, p. 6; & 52, p. 6.  Plaintiffs have not responded to

22    Defendants Alloway, May, and Plumb's motions for summary judgment on this issue.  Dkts. 27,

23    29 & 30.  Defendants' motions regarding negligent investigation are unopposed and should be

24

1    granted.

2    **B. NEGLIGENT SUPERVISION**

3    Defendants Whatley, Alloway, Inklebarger, Polonsky, May, and Sargent assert that any

4    claim for negligent supervision against them should be dismissed.  Dkts. 25, p. 10; 27, p. 4; 28,

5    p. 4; 29, p. 4; 31, p. 4; & 32, p. 4.  Defendants Whatley, Alloway, Inklebarger, Polonsky, May,

6    and Sargent state that Plaintiffs' claim for negligent supervision is against the City of Bremerton,

7    not the individual Defendants, and that to the extent Plaintiffs are asserting a negligent

8    supervision claim against the individual Defendants, they allege that they did not supervise any

9    of the officers involved in the search warrant planning and execution.  *Id*.  Plaintiffs do not

10   oppose summary judgment on this issue for all Defendants except for the City of Bremerton.

11   Dkt. 49, p. 6.

12   Defendant Plumb supervised SOG detectives Polonsky, Whatley, Inklebarger, Alloway,

13   and May.  Dkt. 30, p. 4.  Defendant Plumb asserts that Plaintiffs' claim for negligent supervision

14   is against Defendant City of Bremerton.  Plaintiffs' have not responded to Defendant Plumb's

15   summary judgment motion on this issue.

16   Defendant City of Bremerton asserts that Plaintiff Tillett's negligent supervision claim

17   should be dismissed because the City's employees did not act tortiously and that no failure to

18   supervise was a proximate cause of Tillett's alleged injuries.  Dkt. 26, p. 4.  Defendant City of

19   Bremerton states that there is no evidence that any of the Defendants acted outside the scope of

20   employment, there is no evidence that any of the Defendants acted tortiously, and there no

21   evidence that City's conduct was the proximate cause of Tillett's injuries.  Dkt. 26, p. 4-5.

22   Plaintiffs respond by asserting that Defendant City of Bremerton is liable for "not taking

23   the time to better explain Whatley's new position before he injured an innocent citizen."  Dkt.

24

1 | 48, p. 7.

2 |      Defendant City of Bremerton replies that Plaintiffs failed to identify any evidence to meet

3 | any of the elements for negligent supervision.  Dkt. 61.

4 |      To establish a claim for negligent supervision a plaintiff must show (1) an employee

5 | acted outside the scope of his or her employment, (2) the employee presented a risk of harm to

6 | others, (3) the employer knew, or should have known in the exercise of reasonable care that the

7 | employee posed a risk to others, and (4) that the employer's failure to supervise was the

8 | proximate cause of injuries to plaintiff.  *Briggs v. Nova Services*, 135 Wash.App. 955, 966

9 | (2006)(*citing Niece v. Elmview Group Home*, 131 Wash.2d 39 (1997)).

10 |      Plaintiffs have not shown that any of the employees acted outside the scope of his or her

11 | employment.  It is undisputed that the Defendants were serving a valid search warrant on the

12 | residence.  Plaintiffs appear to argue that Defendant Whatley was not acting in accordance with

13 | his role on the SOG, but this allegation is unsupported by the evidence.  Even if there were

14 | critical comments about Defendant Whatley's actions, it has not been shown that he acted

15 | outside the scope of his employment.

16 |      Plaintiffs have not shown that any of the Defendants presented a risk of harm or that City

17 | of Bremerton knew or should have known that one of the Defendants posed a risk to others.

18 | Nothing has been alleged regarding the Defendants' backgrounds that would indicate that they

19 | posed a risk of harm, and no evidence has been produced to support any of the elements of

20 | negligent supervision.

21 |      Finally, Plaintiff has not shown a linkage between any alleged failure to supervise and

22 | Plaintiff Tillett's injuries.  Plaintiffs have failed to show a *prima facie* case.  For the foregoing

23 | reasons, Defendants City of Bremerton and Plumb's motions for summary judgment regarding

24 |

1   negligent supervision should be granted.  As noted above, the remaining Defendants' motions for

2   summary judgment are unopposed, and should be granted.

3   **C.  42 U.S.C. § 1983 CLAIM**

4         Defendant City of Bremerton asserts that Plaintiffs' § 1983 claims should be dismissed

5   because there was no constitutional violation which was the product of a policy, practice, or

6   custom adopted and promulgated by the city's officials.  Dkt. 26, p. 5.  Defendants Whatley and

7   Inklebarger assert that Plaintiffs' § 1983 claims should be dismissed because they are entitled to

8   qualified immunity.  Dkts. 25, p. 10-21; 28, p. 4-5.  Defendants Alloway, May, and Plumb assert

9   that Plaintiffs' § 1983 claims should be dismissed because they were not involved in obtaining

10   the search warrant and had no contact with Plaintiff Tillett.  Dkts. 27, p. 4; 29, p. 4; & 30, p. 5.

11   Defendant Sargent asserts that Plaintiffs' § 1983 claims should be dismissed because he was not

12   involved with obtaining the search warrant and the only contact he had with Plaintiff Tillett was

13   to provide comfort to Tillett.  Dkt. 32, p. 5.  Defendant Polonsky asserts that Plaintiffs' § 1983

14   claims should be dismissed because he did not have contact with Plaintiff Tillett and that the

15   search warrant obtained was based on ample probable cause.  Dkt. 31, p. 4.

16         Plaintiffs have not responded to Defendants Alloway, May, and Plumb's motions for

17   summary judgment.  Dkts. 27, 29 & 30.

18         The Court will first examine City of Bremerton's liability, followed by the other

19   individual Defendants' liability.

20         **1.  *Monell* Legal Standard – City of Bremerton**

21         A city is liable for monetary damages under 42 U.S.C. § 1983 if a constitutional violation

22   is a product of a policy, practice, or custom adopted and promulgated by the city's officials.

23   *Levine v. City of Alameda*, 525 F.3d 903, 907 (9th Cir. 2008).  To establish liability, a plaintiff

24

1   must establish that he was deprived of a constitutional right and that the city had a policy,

2   practice, or custom which amounted to "deliberate indifference" to the constitutional right and

3   was the "moving force" behind the constitutional violation.  *Id*.  A custom is an act not formally

4   approved by an appropriate decision maker, but is a practice so widespread as to have the force

5   of law.  *Bd. Of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 404 (1997).

6   **2. City of Bremerton Liability Analysis**

7   Defendant City of Bremerton asserts that Tillett's constitutional rights were not violated

8   and that Tillett has not identified any City policy, practice or custom that violated his rights.

9   Dkt. 26, p. 5.  Plaintiffs assert that the City of Bremerton was deliberately indifferent in their

10   custom of ignoring the raid plan.  Dkt. 48, p. 8.  Defendant City of Bremerton asserts that there is

11   no evidence that any of the officers ignored the operational plan, that there is no evidence that

12   any of the officers ignored an operational plan on any prior occasion, that there was no

13   constitutional violation, and that there is no evidence that ignoring the alleged custom caused

14   Tillett's constitutional rights to be violated.  Dkt. 61, p. 8.

15   Plaintiffs have not presented evidence showing that the Defendants ignored the

16   operational plan, and the allegations of *Monell* liability made by Plaintiffs are unsupported by the

17   record.  Even if the Court assumes that the Defendants ignored the operational plan, Plaintiffs

18   have not shown that "the practice [was] so widespread as to have the force of law."  Plaintiffs

19   have not presented evidence of any prior actions where Defendants did not follow an operational

20   plan.  Finally, as will be explained below, there was no constitutional violation of Tillett's

21   constitutional rights.  For the foregoing reasons, the City of Bremerton is not liable under 42

22   U.S.C. § 1983.  Defendant City of Bremerton's motion for summary judgment as to Plaintiffs' §

23   1983 claim should be granted.

24

ORDER - 11

### 3. Qualified Immunity Legal Standards

 "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  "Through application of the qualified immunity doctrine, public servants avoid the general costs of subjecting officials to the costs of trial - distraction of officials from their governmental duties, inhibition of discretionary action, and deterrence of able people from public service." *V-1 Oil Co. v. Smith*, 114 F.3d 854, 857 (9th Cir. 1997)(*internal citations omitted*).   The immunity is "immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

The Supreme Court established a two-part analysis in *Saucier v. Katz*, 533 U.S. 194, 201 (2001), for determining whether qualified immunity is appropriate in a suit against a public official for an alleged violation of a constitutional right.  *Boyd v. Benton County*, 374 F.3d 773, 778 (9th Cir. 2004), citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  Although no longer mandatory, the Supreme Court has recently held that it may be "beneficial" for a court required to rule upon qualified immunity to examine the *Saucier* factors:  (1) whether the official violated the plaintiff's constitutional rights on the facts alleged and (2) if there was a violation, whether the constitutional rights were clearly established.  *Pearson v. Callahan*, 129 S.Ct. 808, (2009) (holding that the *Saucier* two-part analysis was no longer mandatory).

### 4.  Qualified Immunity Analysis

Defendant Whatley argues that he is entitled to qualified immunity because he was acting reasonably and that he did not violate a "clearly established statutory or constitutional rights of which a reasonable person would have known."  Dkt. 25, p. 10.  Defendant Whatley makes the

following arguments: (1) the search of the residence was legal because it was authorized by a valid search warrant; (2) Whatley's seizure of Plaintiff Tillett was legal because Tillett was an occupant of a residence being served a search warrant; (3) Defendant Whatley's use of force was reasonable; (4) Defendant Whatley's act of pointing his firearm at Tillett was reasonable under the circumstances; and (5) the use of wrist restraints was reasonable.  Dkt. 25, p. 11-21.

Plaintiffs respond by asserting that excessive force was used in detaining Plaintiff Tillett. Dkt. 49, p. 7-8.  Plaintiffs allege that the Defendants knew that Tillett was running a business out of the garage, that Defendant Whatley saw a male subject enter the garage, and that three other Defendants saw Tillett enter the garage.  Dkt. 29, p. 9.  Plaintiffs assert that Defendants, based on the information they had, should have entered through the garage and not through the house. Dkt. 49, p. 10.  It appears that Plaintiffs are also arguing that Defendants did not have reason to detain Tillett because he did not pose a threat.  Dkt. 49, p. 10.  Finally, Plaintiffs appear to argue that Defendant Whatley did not follow operational plans.  Dkt. 49, p. 10-11.

Defendant Whatley states in his reply that Plaintiffs' theory of liability is limited to their assertion that Whatley used an unreasonable amount of force to detain Plaintiff Tillett.  Dkt. 60, 1-2.  Defendant Whatley states that Plaintiffs do not assert that the search warrant was invalid, that the officers exceeded the scope of the search warrant, that Whatley's decision to detain Tillett was unconstitutional, or that Whatley pointing his firearm at Tillett was unconstitutional. Dkt. 60, p. 2.

It appears that Plaintiffs are only arguing that the force used to detain Plaintiff Tillett was an unreasonable use of force, which is a Fourth Amendment violation.  As noted by Defendant Whatley, Plaintiffs are not challenging the search warrant, whether the Defendants exceeded the scope of the search warrant, whether Whatley's decision to detain Tillett was unconstitutional, or

1   whether Whatley pointing his firearm at Tillett was unconstitutional.  The Court need only

2   examine whether there was excessive force used in the detention of Tillett to determine if

3   qualified immunity applies.

4        The use of force to effect an arrest is subject to the Fourth Amendment's prohibition on

5   unreasonable seizures.  *Graham v. Connor*, 490 U.S. 386, 395 (1989).  To determine whether

6   officers used excessive force during an arrest, courts balance "the nature and quality of the

7   intrusion on the individual's Fourth Amendment interests against the countervailing

8   governmental interests at stake."  *Graham* at 396 (quotation marks omitted); *see also Miller v.*

9   *Clark County*, 340 F.3d 959, 964 (9th Cir.2003).  We examine the "facts and circumstances of

10  each particular case, including the severity of the crime at issue, whether the suspect poses an

11  immediate threat to the safety of the officers or others, and whether he is actively resisting arrest

12  or attempting to evade arrest by flight."  *Graham*, 490 U.S. at 396; *see also Miller*, 340 F.3d at

13  964.

14       We also consider, under the totality of the circumstances, the "quantum of force" used to

15  arrest the plaintiff, *Davis v. City of Las Vegas*, 478 F.3d 1048, 1055 (9th Cir.2007), the

16  availability of alternative methods of capturing or detaining the suspect, *id*. at 1054, and the

17  plaintiff's mental and emotional state, *see Deorle v. Rutherford*, 272 F.3d 1272, 1282 (9th

18  Cir.2001).

19       Although on summary judgment we view the evidence in the light most favorable to

20  Plaintiffs, "[t]he 'reasonableness' of a particular use of force must be judged from the perspective

21  of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  *Graham*,

22  490 U.S. at 396.  Whether a reasonable officer could have believed his or her conduct was proper

23  is a question of law for the court and should be determined at the earliest possible point in

24

ORDER - 14

1  litigation.  *ActUp!Portland v. Bagley*, 988 F.2d 868, 873 (9th Cir. 1993).

2         The Court will first balance the nature of the intrusion against the governmental interest.

3  The Court will then examine the totality of the circumstances.

4         **a. Balancing Test.**

5         In balancing the intrusion upon an individual's Fourth Amendment rights against the

6  governmental interests, we first assess the gravity of the particular intrusion by evaluating the

7  type and amount of force inflicted.  *Miller*, 340 F.3d at 964.  In this case, Defendant Whatley

8  encountered Plaintiff Tillett come from behind a closed door.  Dkt. 25, p. 6.  Whatley announced,

9  "Police get on the ground."  *Id*.  Tillett refused commands to lie on the ground.  *Id*.  Tillett

10  retreated and Whatley attempted to grab Tillett's coat, but Tillett backed away.  *Id*.  As Tillett

11  retreated he fell into a sitting position and Whatley grabbed Tillett by the coat.  *Id*.  Whatley told

12  Tillett to lie on the ground, but Tillett refused and continued to resist.  *Id*.  Whatley placed Tillett

13  onto the ground by using Tillett's coat.  *Id*.  Defendant Inklebarger arrived to assist at that point.

14  Whatley and Inklebarger attempted to place hand restraints on Tillett, but Tillett tucked this left

15  arm under his body.  *Id*.  Whatley and Inklebarger were eventually able to place hand restraints

16  on Tillett.  *Id*.

17         The use of force in this situation was minimal.  Defendant Whatley did not hit or strike

18  Plaintiff Tillett and did not use any lethal or non-lethal weapons on Tillett.  The only contact was

19  the grabbing of Tillett's coat in order to place hand restraints on Tillett.  This contact was brief

20  and was only enough to effectuate a detention.  Even if the Court assumes that Tillett hand was

21  broken during the detention, the force applied appears minimal.

22         Next, we assess the governmental interest by evaluating: (1) the severity of the crime at

23  issue, (2) whether the suspect posed an immediate threat to the safety of the officers or others,

24

1   and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight.

2   *Miller*, 340 F.3d at 964.  The 1718 Sheridan residence was the subject of a search warrant based

3   on a narcotics investigation, specifically methamphetamine sales.  Dkt. 25, p. 3.  The warrant

4   authorized any peace officer to search the 1718 Sheridan residence in order to seize evidence

5   relating to RCW 69.50.401, VUCSA.  Dkt. 25, 3-4.  According to RCW 69.50.401(1)(b), a

6   person that manufactures, delivers, or possesses with intent to manufacture or deliver

7   amphetamines is guilty of a class B felony.  The sale and possession of methamphetamines may

8   be considered a serious offense since it is a felony punishable with up to ten years in prison. *Id.*;

9   RCW 9A.20.021.

10      Plaintiff Tillett was located at the residence at the time of the execution of the search

11  warrant.  He was not identified at the time of the encounter with Defendant Whatley.  Plaintiff

12  Tillett refused the commands of a law enforcement agent even though Tillett should have had

13  notice that police were in the residence.  It is undisputed that Defendant Whatley and other

14  officers were wearing clothing with the word "Police" and that they were announcing that they

15  were police.  Plaintiff Tillett was retreating into an area that was not secured by the law

16  enforcement agents.  Defendant Whatley alleged that Tillett was wearing a coat, which could

17  have contained a weapon, and Tillett's hands were down around his waist where Tillett could

18  access a weapon.  These facts weigh in favor of Defendant Whatley.  Plaintiffs, however,

19  characterize Tillett as frail and elderly.  While it is not disputed that Tillett was 81-years-old, it

20  was unknown at the time if Tillett had a weapon or if there were weapons located in the garage

21  that Tillett was retreating to.  On balance, the facts weigh in Defendant Whatley's favor.

22      Plaintiff Tillett also was refusing Defendant Whatley's command to lie on the ground.

23  Tillett retreated away from Whatley and resisted being placed in hand restraints once being

24

1    placed on the ground.  It appears that Tillett was evading detention by flight and resisting

2    detention.  This weighs in Defendant Whatley's favor.

3            It is clear that the governmental interest in detaining Plaintiff Tillett was outweighed by

4    the intrusion upon Tillett's Fourth Amendment rights.  The crime was serious, Tillett posed a

5    threat, and he was resisting and avoiding detention.

6            **b. Totality of the Circumstances.**

7            The Court next considers the totality of the circumstances.  The Court considers the

8    "quantum of force" used to arrest the plaintiff, the availability of alternative methods of

9    capturing or detaining the suspect, and the plaintiff's mental and emotional state.  As noted

10   above, the quantum of force used was minimal.  Plaintiffs argue that there was alternative

11   method available to Defendants.  Plaintiffs state that Defendants should have first entered the

12   garage and detained Plaintiff Tillett.  There appears to be no advantage in this alternative which

13   may have ended in the same result.  Finally, no evidence shows that Defendants knew the state

14   of mind or emotional state of Plaintiff Tillett.  This is a neutral factor in the analysis.  Given the

15   totality of the facts, the factors weigh in the favor of Defendants.  Plaintiff Tillett's Fourth

16   Amendment rights were not violated.

17           It should be noted that, assuming Tillet's hand was broken in the fracas, that is not proof

18   that the force used was excessive.  In these circumstances, with an elderly person resisting, an

19   injury does not infer or imply excessive force.

20           In conclusion, the force used on Plaintiff Tillett was minimal and reasonable under the

21   circumstances.  The force used was not excessive.  There was no violation of Plaintiff Tillett's

22   Fourth Amendment rights.  Because there was no constitutional violation, Defendant Whatley is

23   entitled to qualified immunity.  Defendant Whatley's summary judgment as to qualified

24

ORDER - 17

1    immunity should be granted.

2        **5. Other Defendants**

3        Defendant Inklebarger asserts that he is entitled to qualified immunity because he used

4    minimal force in applying hand restraints to Plaintiff Tillett.  Dkt. 28, p. 4.  Plaintiffs assert that

5    Defendant Inklebarger violated Plaintiff Tillett's civil rights because Inklebarger stood by while

6    watching Defendant Whatley use excessive force.  Dkt. 50, p. 11.  Plaintiffs do not contest that

7    Defendant Inklebarger's act of applying hand restraints was reasonable.

8        Plaintiffs' argument regarding Inklebarger's liability is unavailing.  As noted above, the

9    force used by Defendant Whatley was reasonable.  Plaintiff Tillett's constitutional rights were

10   not violated.  Therefore, Defendant Inklebarger did not violate Tillett's constitutional rights.  For

11   the foregoing reasons, Defendant Inklebarger's motion for summary judgment regarding

12   Plaintiffs' § 1983 claim should be granted.

13       Defendant Polonsky asserts that he is entitled to qualified immunity because he had no

14   physical contact with Plaintiff Tillett.  Dk. 31, p. 4.  Plaintiffs assert that Defendant Polonsky is

15   still liable because Defendant Polonsky had a duty to protect Tillett from Defendant Whatley's

16   excessive force.  Dkt. 51, p. 11.  Plaintiffs' argument is unavailing.  As noted above, the force

17   used by Defendant Whatley was reasonable.  Defendant Polonsky did not violate Plaintiff

18   Tillett's constitutional rights.  Defendant Polonsky's motion for summary judgment regarding

19   Plaintiffs' § 1983 claim should be granted.

20       Defendant Sargent asserts that he is entitled to qualified immunity because he did not use

21   force against Plaintiff Tillett.  Dkt. 32, p. 4.  Defendant Sargent only contact was to remove the

22   hand restraints on Tillett's hand and to provide Tillett with a chair to sit in.  Dkt. 32, p.1 & 5.

23   Plaintiffs assert that Defendant Sargent is liable because Defendant Sargent had a duty to protect

24

ORDER - 18

1   Tillett from Defendant Whatley's excessive force.  Dkt. 52, p. 11.  Plaintiffs' argument is

2   unavailing.  As noted above, the force used by Defendant Whatley was reasonable.  Defendant

3   Sargent did not violate Plaintiff Tillett's constitutional rights.  Defendant Sargent's motion for

4   summary judgment regarding Plaintiffs' § 1983 claim should be granted.

5          Plaintiffs have not responded to Defendants Alloway, May, and Plumb's motions for

6   summary judgment.  Dkts. 27, 29 & 30.  Summary judgment "should be granted where the non-

7   moving party fails to offer evidence from which a reasonable [factfinder] could return a

8   [decision] in its favor."  *Triton Energy Corp*. at 1220.  Local Rule CR 7(b)(2) states that if a

9   party fails to file papers in opposition to a motion, such failure may be considered by the court as

10  an admission that the motion has merit.  It is undisputed that Defendants Alloway, May, and

11  Plumb used no force against Plaintiff Tillett.  Therefore, Plaintiff Tillett's constitutional rights

12  were not violated.  Defendants Alloway, May, and Plumb's motions for summary judgment

13  should be granted as to Plaintiffs' § 1983 claims.

14  **D. 42 U.S.C. § 1985**

15         Defendants City of Bremerton, Whatley, Alloway, Inklebarger, May, Plumb, Polonsky,

16  and Sargent assert that Plaintiffs' 42 U.S.C. § 1985 claim should be dismissed because there is

17  no evidence that the City of Bremerton or its employees acted with racial animus.  Dkt. 25, p. 23.

18         Plaintiffs do not oppose Defendants City of Bremerton, Whatley, Alloway, Inklebarger,

19  May, Plumb, Polonsky, and Sargent's motions for summary judgment regarding this issue.  Dkts.

20  48, p. 10; 49, p.12; 50, p. 13; 51, p. 11; & 52, p. 11.  Plaintiffs have not responded to Defendants

21  Alloway, May, and Plumb's motions for summary judgment.  Dkts. 27, 29 &30.  Defendants'

22  motions for summary judgment regarding Plaintiffs' 42 U.S.C. § 1985 claims are unopposed and

23  should be granted.

24

1   **E. NEGLIGENT ARREST**

2       Defendants City of Bremerton, Whatley, Alloway, Inklebarger, May, Plumb, Polonsky,

3   and Sargent assert that Plaintiffs' claim for negligent arrest should be dismissed because there is

4   no cause of action for negligent arrest.  Dkts. 26, p. 6; 25, p. 21; 27, p. 4; 28, p. 5; 29, p. 4; 30, p.

5   5; 31, p. 5; 32, p. 5.  Defendants City of Bremerton, Whatley, Alloway, Inklebarger, May,

6   Plumb, Polonsky, and Sargent contend that when a negligence claim is brought against a

7   government entity, the public duty doctrine applies.  *Id.*  Plaintiffs assert that Defendant City of

8   Bremerton is liable for negligence.

9       The public duty doctrine provides "that for one to recover from a municipal corporation

10  in tort it must be shown that the duty breached was owed to the injured person as an individual

11  and was not merely the breach of an obligation owed to the public in general."  *Bailey v. Town of*

12  *Forks*, 108 Wash.2d 262, 265 (1987).  "Absent a showing of a duty running to the injured

13  plaintiff from agents of the municipality, no liability may be imposed for a municipality's failure

14  to provide protection or services to a particular individual."  *Id.* at 266.  One exception to the

15  public duty doctrine is the "legislative intent exception."  "Liability can be founded upon a

16  municipal code if that code by its terms evidences a clear intent to identify and protect a

17  particular and circumscribed class of persons."  *Halvorson v. Dahl*, 89 Wash.2d 673, 676 (1978);

18  *see also Hannum v. Washington State Dept. of Licensing*, 144 Wash.App. 354, 359 (2008).

19      Plaintiffs assert that RCW 9A.80.010 is a law which creates liability.  Dkt. 49, p. 11-12.

20  RCW 9A.80.010 states a "public servant is guilty of official misconduct if, with intent to obtain a

21  benefit or to deprive another person of a lawful right or privilege… intentionally commits an

22  unauthorized act under color of law; or … intentionally refrains from performing a duty imposed

23  upon him by law."

24

1      Plaintiffs have not shown that the public duty doctrine does not apply to Defendants.

2  First, Plaintiffs have not provided authority stating RCW 9A.80.010 creates liability in

3  accordance with the public duty doctrine's legislative intent exception, and the Court has found

4  no authority stating RCW 9A.80.010 creates an exception to the public duty doctrine.  Moreover,

5  RCW 9A.80.010 is a duty owed to the general public and not to any individual.  It is a duty for a

6  public servant not to commit unauthorized acts or refrain from performing duties.  This duty is

7  owed to all the public and not a "particular and circumscribed class of persons."  The plain

8  reading of the statute does not indicate that it applies to any particular and circumscribed class of

9  persons.  Therefore, the legislative intent exception does not apply here.  The public duty

10  doctrine prevents Plaintiffs' claims for negligence.  For the foregoing reasons, Defendants'

11  motions for summary judgment regarding negligent arrest should be granted.

12  **F.  OUTRAGE CLAIM**

13      Defendants Whatley, City of Bremerton, Alloway, Inklebarger, May, Plumb, Polonsky,

14  and Sargent assert that Plaintiffs' outrage claim should be dismissed because his actions were not

15  atrocious and utterly intolerable in a civilized community.  Dkts. 25, p. 24; 26, p. 6; 27, p. 5; 28,

16  p. 6, 29, p. 5; 29, p. 5; 30, p. 5; 31, p. 5; & 32, p. 5.

17      The tort of outrage requires the proof of three elements: (1) extreme and outrageous

18  conduct, (2) intentional or reckless infliction of emotional distress, and (3) actual result to

19  plaintiff of severe emotional distress.  *Kloepfel v. Bokor*, 149 Wash.2d 192, 195-96 (2003).  The

20  first element requires proof that the conduct was "so outrageous in character and so extreme in

21  degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and

22  utterly intolerable in a civilized community.  *Id*. at 196; *see also Robel v. Roundup*, 148 Wash.2d

23  35, 51 (2002).  The tort of outrage does not extend to mere insults, indignities, threats,

24

1    annoyances, petty oppressions, or other trivialities.  *Kloepfel*, 149 Wash.2d at 196.

2         Although the three elements are fact questions for the jury, this first element of the test

3    goes to the jury only after the court determines if reasonable minds could differ on whether the

4    conduct was sufficiently extreme to result in liability.  *Robel*, 148 Wash.2d at 51.

5         In this case, Plaintiffs allege that "Defendants' conduct was extreme and outrageous

6    because in the face of information to the contrary, police officers stopped a citizen without

7    probable cause and subjected him [to] excessive force for a person of his advanced years and

8    delicate constitution."  Dkt. 49, p. 12.[1]

9         It is undisputed that the search warrant was a valid search warrant, and Plaintiffs have not

10   provided evidence showing the Defendants exceeded the scope of the search warrant.  It is

11   undisputed that Defendants Alloway, May, and Polonsky had no physical contact with Plaintiff

12   Tillett.  Dkts. 27, p. 5; 29, p. 5; & 31, p. 5.  It is undisputed that Plaintiff Tillett refused

13   commands by Defendant Whatley to lie on the ground, retreated into the garage, and resisted

14   arrest.  Defendant Inklebarger's contact with Plaintiff Tillett only involved the placing of hand

15   restraints on Tillett.  Dkt. 28, p. 6.  Defendant Plumb's contact with Plaintiff Tillett involved

16   escorting Tillett and applying a bandage to Tillett's hand.  Dkt. 30, p. 5.  Finally, Defendant

17   Sargent's contact with Plaintiff Tillett involved removing the hand restraints, providing a chair

18   for Tillett to sit in, and retrieving Tillett's tea from the garage.  Dkt. 32, p. 2 & 5.

19        None of these acts, either by themselves or in combination, can be viewed by a

20   reasonable person as extreme or outrageous.  As noted above, the force used was minimal and

21   reasonable under the circumstances at the time, Plaintiff Tillett did not need to go to the hospital

22   for medical care, and Plaintiff Tillett refused medical care when asked.

23

24   [1] While a person's "advanced years and delicate condition" are considered in excessive force analysis, they are not
     factors allowing one to refuse lawful orders or resist arrest.

ORDER - 22

1    Plaintiffs also appear to argue that the detention of Plaintiff Tillett was improper.

2    Plaintiffs, however, have not provided authority that Defendants may not detain someone,

3    unidentified at the time, during the execution of a search warrant.  Authority, in fact, states that

4    detention of an occupant of a premise while a proper search is being conduct is allowable.  *See*

5    *Muehler v. Mena*, 544 U.S. 93 (2005)("[The Supreme Court] held that officers executing a

6    search warrant for contraband have the authority 'to detain the occupants of the premises while a

7    proper search is conducted.'").  Again, it is undisputed that the search warrant was properly

8    issued and that the Defendants acted within the scope of the search warrant.  Defendants found

9    Plaintiff Tillett on the property where the search warrant was being served, and they detained

10   him, which was allowable under the law.  The minimal use of force when executing a proper

11   search warrant is not extreme or outrageous.

12   Given the undisputed facts of the case, reasonable minds would not differ on whether the

13   conduct was sufficiently extreme to result in liability.  The conduct of Defendants was not

14   extreme and outrageous.  Since Plaintiffs cannot establish the first element of the tort of outrage,

15   their claim fails as a matter of law.  For the foregoing reasons, Defendants' motions for summary

16   judgment regarding Plaintiffs' claim of outrage should be granted.

17   **G. LOSS OF CONSORTIUM CLAIM**

18   Defendants Whatley, City of Bremerton, Alloway, Inklebarger, May, Plumb, Polonsky,

19   and Sargent assert that Plaintiffs' loss of consortium claim should be dismissed because

20   Defendants did not tortiously cause injury to Mr. Tillett.  Dkts. 25, p. 24; 26, p. 6; 27, p. 5; 28, p.

21   6, 29, p. 5; 29, p. 5; 30, p. 6; 31, p. 5-6; & 32, p. 5-6.  Defendants state that Plaintiff Grace

22   Tillett's claim is based on her husband's claims, and that since Mr. Tillett's claims do not survive

23   summary judgment, her claim should also fail.  *Id.*   Plaintiffs argue that the claim for loss of

24

1    consortium is a standalone claim, and does not need Plaintiff Tillett's claims to survive to be

2    viable. Dkt. 49, p. 14-15.  Plaintiffs cite *Lund v. Caple*, 100 Wash.2d 739, 744 (1984) to support

3    their argument.  *Id*.  *Lund* states that "a deprived spouse may sue for loss of consortium damages

4    by either joining in a lawsuit with the spouse who sustained primary injuries or by bringing an

5    independent suit."  *Id*. at 744.

6         Plaintiffs misread *Lund*.  The *Lund* court examined whether a loss of consortium claim

7    may be maintained as a cause of action without joining the other spouse's underlying tort claims.

8    *Lund*, 100 Wash.2d at 743.  The *Lund* court held that a "deprived" spouse may sue for loss of

9    consortium damages by either joining in a lawsuit with the spouse who sustained primary

10   injuries or by bringing an independent suit.  *Id*. at 744.  Liability to the "impaired" spouse is still

11   an element to loss of consortium.  In this case, since all of Plaintiff Tillett's claims have been

12   dismissed, Plaintiff Grace Tillett's claim for loss of consortium is no longer available.

13        Plaintiffs attempt to revive the claim by asserting that the loss of consortium claim is

14   based on assault.  Plaintiffs' complaint, however, explicitly states that the loss of consortium is

15   based on Plaintiff Tillett's claims.  Dkt. 1, ¶ 11.2 ("*That as a result of the above*, Plaintiff Grace

16   L. Tillett has sustained and continues to sustain damages in that she has lost and continues to lose

17   the services and consortium of her husband…").  Plaintiff Grace Tillett has never alleged that

18   assault was the underlying tort in her loss of consortium claim.

19        For the forgoing reasons, Defendants' motions for summary judgment on the consortium

20   claim should be granted.

21

22

23

24

1

**III. ORDER**

2    The Court does hereby find and **ORDER**:

3    (1)    Defendants' Motions for Summary Judgment (Dkts. 25, 26, 27, 28, 29, 30, 31, &

4            32) are **GRANTED**;

5    (2)    Plaintiffs' case is **DISMISSED**; and

6    (3)    The Clerk is directed to send copies of this Order to all counsel of record and any

7            party appearing *pro se* at said party's last known address.

8    DATED this 3rd day of January, 2011.

9

10

11   ROBERT J. BRYAN
     United States District Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

ORDER - 25